Nathan Dooley (SBN 224331)
COZEN O'CONNOR
601 S. Figueroa Street, Suite 370
Los Angeles, California 90017
Tel: 213-892-7933
Fax: 213-892-7999
Email: ndooley@cozen.com

Barry Golob (*Pro Hac Vice*)
Thomas J. Fisher (*Pro Hac Vice*)
COZEN O'CONNOR
1200 19TH Street, NW
Washington, DC 20036
Tel: 202-912-4800
Fax: 202-861-1905
Email: bgolob@cozen.com
       tfisher@cozen.com

William E. Davis, III (*Pro Hac Vice*)
Rudolph (Rudy) Fink IV (*Pro Hac Vice*)
THE DAVIS FIRM, PC
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Tel: 903-230-9090
Fax: 903-230-9661
Email: bdavis@davisfirm.com
       rfink@davisfirm.com

Attorneys for Plaintiff
10TALES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| 10TALES, INC., | Case No.: 5:21-cv-03868-VKD |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(c) AND 35 U.S.C. § 101** |
| v. | |
| TIKTOK INC., TIKTOK PTE. LTD. BYTEDANCE LTD., AND BYTEDANCE INC., | |
| Defendants. | |

Date:       October 31, 2023
Time:       10:00 a.m.
Courtroom:  2 – 5th Floor
Judge:      Hon. Virginia DeMarchi

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................................. 2

   A.   10Tales and the '030 Patent ......................................................................... 2

        1.   The Digital Media Technical Field ................................................... 3

        2.   Conventional Systems in the Early 2000s ........................................ 3

        3.   10Tales' Patented Solution ............................................................... 3

   B.   The Prosecution History of the '030 Patent ................................................ 6

   C.   TikTok's Denied IPR Proceeding ................................................................ 6

III. APPLICABLE LAW .............................................................................................. 7

IV.  ARGUMENT .......................................................................................................... 9

   A.   *Alice* Step-One .......................................................................................... 10

        1.   TikTok's Alice Step-One Analysis Fails to Consider Claim 1 as a
             Whole ............................................................................................... 11

        2.   Claim 1 is Not Directed to an Abstract Idea ................................... 15

        3.   Claim Construction Confirms Claim 1 is Patent-Eligible ............... 17

        4.   The Precedent TikTok Cites is Factually Distinguishable .............. 19

   B.   *Alice* Step-Two ......................................................................................... 20

        1.   Claim Construction Confirms Claim 1 is Directed to an Inventive
             Concept ............................................................................................ 24

   C.   Claim 1 Does Not Preempt the Abstract Idea of Targeted Advertising ..... 24

V.   CONCLUSION .................................................................................................... 25

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(C) AND 35 U.S.C. § 101

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018)..................................................................9, 25

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013)...........................................................................9

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014).......................................................................... *passim*

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
    977 F.3d 1379 (Fed. Cir. 2020).........................................................................11

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
    788 F.3d 1371 (Fed. Cir. 2015).........................................................................17

*Arrhythmia Research Tech., Inc. v. Corazonix Corp.*,
    958 F.2d 1053 (Fed. Cir. 1992)...........................................................................9

*Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.)*,
    687 F.3d 1266 (Fed. Cir. 2012)...........................................................................8

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)..............................................................20, 21, 23

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)....................................................................9, 20

*CardioNet, LLC v. InfoBionic, Inc*,
    955 F.3d 1358 (Fed. Cir. 2020).........................................................................12

*Cave Consulting Grp., Inc. v. Truven Health Analytics, Inc.*,
    No. 15-cv-2177-SI, 2016 U.S. Dist. LEXIS 8395 (N.D. Cal. Jan. 25, 2016)...........................1

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    927 F.3d 1306 (Fed. Cir. 2019)...........................................................................7

*CLS Bank Int'l v. Alice Corp. Pty.*,
    717 F.3d 1269 (Fed. Cir. 2013).......................................................... *passim*

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    880 F.3d 1356 (Fed. Cir. 2018)....................................................................17, 20

*Cosmokey Sols. GmbH & Co. KG v. Duo Sec. LLC*,
    15 F.4th 1091 (Fed. Cir. 2021)....................................................................15, 18

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014)..........................................................14, 15, 16, 25

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980)..................................................................................1, 10

*Elec. Power Grp. LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)..............................................................19

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)..............................................................12, 13, 14

*Free Stream Media Corp. v. Alphonso Inc.*,
   996 F.3d 1355 (Fed. Cir. 2021)..............................................................19

*Genentech, Inc. v. Chiron Corp.*,
   112 F.3d 495 (Fed. Cir. 1997)................................................................7

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015)..............................................................19

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012)..................................................................................8

*Microsoft Corp. v. i4i Ltd. P'ship*,
   564 U.S. 91 (2011)..................................................................................7

*In re Morsa*,
   809 Fed. App'x. 913 (Fed. Cir. 2020)....................................................19

*Realtime Data LLC v. Reduxio Sys.*,
   831 F. App'x 492 (Fed. Cir. 2020) .........................................................25

*Regents of the Univ. of Minn. v. LSI Corp., Inc.*,
   No. 5:18-cv-00821-EJD, 2023 U.S. Dist. LEXIS 150306 (N.D. Cal. Aug. 25,
   2023) ........................................................................................................7, 10, 23

*Research Corp. Techs., Inc. v. Microsoft Corp.*,
   627 F.3d 859 (Fed. Cir. 2010)................................................................8, 18, 22

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*,
   873 F.3d 1364 (Fed. Cir. 2017)..............................................................10

*Tec-Sec, Inc. v. Adobe Inc.*,
   978 F.3d 1278 (Fed. Cir. 2020)..............................................................12, 13, 14, 15

*Thales Visionix Inc. v. U.S.*,
   850 F.3d 1343 (Fed. Cir. 2017)..............................................................9, 17, 20

*Trinity Info Media, LLC v. Covalent, Inc.*,
    72 F.4th 1355 (Fed. Cir. 2023) .........................................................................11, 19

*Ultramercial, Inc. v. Hulu, LLC*,
    722 F.3d 1335 (Fed. Cir. 2013).........................................................................8, 9, 24

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
    957 F.3d 1303 (Fed. Cir. 2020)...............................................................................16

**Statutes**

35 U.S.C. § 101 ...................................................................................................... *passim*

35 U.S.C. § 282(a) ......................................................................................................1, 7

**Other Authorities**

Fed. R. Civ. P. 12 .................................................................................................... *passim*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. CIV. P. 12(C) AND 35 U.S.C. § 101

## I.    INTRODUCTION

The Court should deny TikTok's Motion, as it has failed to carry its heavy burden here.  Under 35 U.S.C. § 101, "whoever invents … a new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor."  In 1980, the U.S. Supreme Court undertook a statutory construction of § 101, and noted that "Congress intended statutory subject matter to 'include anything under the sun that is made by man.'"  *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980).  "[B]y defining patentable subject matter with 'such expansive terms … Congress plainly contemplated that the patent laws would be given wide scope.'"  *Cave Consulting Grp., Inc. v. Truven Health Analytics, Inc.*, No. 15-cv-2177-SI, 2016 U.S. Dist. LEXIS 8395, at *3 (N.D. Cal. Jan. 25, 2016) (quoting *Chakrabarty*, 447 U.S. at 308).

This motion represents TikTok's **fourth attempt** in this case to invalidate claim 1 of 10Tales' U.S. Patent No. 8,856,030 ("the '030 patent")—which is presumed valid under § 282(a)—prior to discovery.  **First**, TikTok filed a § 101 motion to dismiss this case pursuant to Rule 12(b)(6).  Judge Gonzalez Rogers denied that motion stating that "the Court finds that claim construction can help clarify the basic character of the claimed invention and whether the alleged improvements are in fact improvements over the prior art," and therefore, "the Court finds that it cannot, at this juncture, adjudicate the issue of whether the patent is directed to patent-ineligible ideas."  Dkt. 156 at 6.

**Second**, TikTok filed a petition with the U.S. Patent and Trademark Office's ("PTO") Patent Trial and Appeal Board ("PTAB") seeking *inter partes* review ("IPR") challenging the validity of the '030 patent claims under a preponderance of the evidence standard asserting that claim 1 was invalid as obvious over three different combinations of prior art references.  But a three-judge panel of the PTAB denied TikTok's petition, stating that TikTok failed to demonstrate that any of the prior art asserted in its petition "either alone or in combination, disclose '**retrieving user social network information from at least one source external to the presented first composite digital media display, wherein the user social network information contains one or more user attributes,**' element [1g] in claim 1**."[1]  *See* Exhibit 1 to 10Tales' Request for Judicial Notice ("Exhibit 1"), filed

---

[1]  All emphasis in this brief has been added unless otherwise specified.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(C) AND 35 U.S.C. § 101

1  concurrently herewith, Excerpts from Prosecution History of '030 Patent, *TikTok Inc. v. 10Tales, Inc.*,

2  IPR2021-00476, Paper No. 13, PTAB Decision Denying Institution (PTAB Aug. 13, 2021) at

3  10Tales879.  The PTAB—therefore—found that claim 1 provides an improvement over the prior art.

4  **Third**, in its claim construction briefing, TikTok argued that seven of the ten disputed claim

5  terms were indefinite under § 112—any one of which would render claim 1 invalid.  But this Court

6  disagreed with TikTok, and issued an Order construing each of the disputed terms.  *See* Dkt. 204.  In

7  doing so, the Court found, *inter alia*, that claim 1 was not indefinite as being directed to two separate

8  classes of subject matter as argued by TikTok, but instead, "claim 1 of the '030 patent recites a system

9  (i.e., 'a server' and 'a computer-readable storage medium operably connected') modified by functional

10  terms describing the system's capabilities."  *Id.* at 8.

11  **And now**, TikTok files yet another motion to dismiss—more properly styled a motion for

12  judgment on the pleadings pursuant to Rule 12(c)—asking the Court yet again to invalidate claim 1 of

13  the '030 patent under § 101 so that it does not need to defend 10Tales' infringement suit.

14  The PTO agreed that the system described in claim 1 of the '030 patent was an improvement

15  over prior art systems.  *See* Exhibit 1, June 4, 2014, Notice of Allowability (App. No. 10/819,514) at

16  10Tales848.  The PTAB agreed.  *Id.* at 10Tales879.  In addition to this clear record, 10Tales' First

17  Amended Complaint ("FAC") alleges facts that show these technological improvements and solutions

18  described and claimed by the '030 patent were neither conventional nor generic 18 years ago (in 2003),

19  and they show that conventional systems were improved by the claimed method of analyzing how a

20  user interacts with others in an online social network to create user-specific digital media content.

21  FAC, Dkts. 28, 124 at ¶¶ 58-60.  These facts defeat TikTok's Motion, especially where, as here, the

22  facts alleged in the complaint must be accepted as true.

23  **II.    FACTUAL BACKGROUND**

24       **A.    10Tales and the '030 Patent**

25  10Tales—and its founder, David Russek—pioneered innovative technology that deploys

26  advanced storytelling using 10-second videos submitted by a network of friends that become shared

27  experiences among the friend network.  FAC at ¶ 2.  10Tales' technology has received numerous

28  accolades from the entertainment industry, including the Mobile Excellence Awards.  *Id.*  10Tales'

efforts led to a portfolio of patents, including the '030 patent. 10Tales' solution provides technological improvements upon systems for creating an improved user-specific composite digital media display over the state of the art in 2003. *Id.* at ¶¶ 58-60.

### 1. The Digital Media Technical Field

The '030 patent relates to provisioning user-specific digital media content, a field rooted in technology. The '030 patent has been cited by other technology companies such as Apple, Google, Microsoft, IBM, Facebook, Nokia, and Qualcomm in over 220 patent applications.[2]

### 2. Conventional Systems in the Early 2000s

The '030 patent describes the existing technology for providing a digital media narrative to users. Before 10Tales' invention, the known systems had drawbacks in "attract[ing] individuals to content that is personally more relevant and impactful for them." '030 patent, 2:3-4.

These drawbacks are described, e.g., in the context of shortcomings in ad-placement systems that were being developed during the advent of the digital era. *Id.* at 1:52-61. As technology was evolving, advertisers were confronted with the use of technology to avoid advertisements, e.g., by stopping pop-up ads or skipping over the ads. *Id.* None of these systems, however, addressed how technology could be used to understand the individual's likes or dislikes or the individual's current mood to more appropriately adapt the content for the individual. *Id.* at 2:7-11. Mr. Russek insightfully recognized that none of the existing systems could "change the content of the digital media narrative based on user demographics, psychodemographics, emotional states, affinities (cognitive, emotional, and social), self-narrating content classification, internal narrative traits preference topology, time sensitive, episodic expectation sequencing, and collective/collaborative attributes." *Id.* at 2:55-61.

### 3. 10Tales' Patented Solution

10Tales' invention solves the drawbacks of those then conventional systems. 10Tales reimagined the provisioning of personalized digital media content. It improved upon the technical aspects of conventional systems such as ad placement systems with its teachings: by first analyzing how a user interacts with others in an online social network to determine that user's affinity for certain

---

[2] *See* https://patents.google.com/patent/US8856030B2/en?oq=8856030, "Cited By," last accessed October 2, 2023.

digital media content; and then teaching the use of a rule-based algorithm to use this information to create a user-specific composite digital media display unique to that user. FAC at ¶¶ 58-60. The improvements described and claimed in the '030 patent reflect technological improvements over the state of the art at the time. *Id.* The technological improvements and solutions described and claimed in the '030 patent were neither conventional nor generic at the time of the invention. *Id.* Instead, the invention claimed in the '030 patent involved novel and nonobvious approaches to the problems and shortcomings prevalent in the art at the time. *Id.* The inventions claimed in the '030 patent cover more than just the performance of some well-understood, routine, and/or conventional activities already known to the industry prior to the '030 patent. *Id.*

The '030 patent describes a system for "customizing and personalizing digital media content based on a combination of the user's demographics, psychodemographics, cognitive states, emotional states, social placement and group interaction dynamics within an online community, and/or affinity for certain content elements (images, sounds, segments, graphics, video, text, dialog), self provided narrating content, internal narrative traits preference topology, and expectation level and temporal spacing of assets within the narrative." '030 patent, 2:66-3:7. **The system personalizes the digital media content based not only on information provided to the system by the user, but also through the social dynamics of the user as learned by the system**. *Id.* at 3:24-32; 4:15-23. By way of example, the system may identify attributes related to an individual's dynamics within the community and the potential for content to be defined within that dimension. *Id.* at 8:1-6. These and other attributes are correlated with attributes of the digital media assets to match the assets to an individual in order to provide the highest level of impact. *Id.* at 7:56-59.

The correlation of a user's attributes with specific digital media assets is accomplished through rule-based techniques such as summing the number of matching attributes, identifying key attributes, or providing a true/false test for one or more assets. *Id.* at 7:56-62. Relative weighting schemes may also be incorporated to give preference to or emphasize certain attributes. *Id.* at 7:62-64. The '030 patent describes a number of algorithms through which the correlation is achieved. For example, artificial intelligence techniques based on look-up tables, neural networks, and fuzzy logic can be applied to determine the best digital media assets to present to a particular user based on the system's

stored attributes for that user.  *Id.* at 15:17-34.



FIG. 5A

The '030 patent describes a digital media asset personalization system—as depicted in Figure 5A—that includes a server 590 that develops the personalized digital media presentation from content 531 and a digital asset repository 541.  The '030 patent describes that the server executes software algorithms that access user profile attributes 561 and online community user attributes 521 to determine digital media assets that will have a strong impact on that user.  *Id.* at 12:17-30; 15:10-34.

The '030 patent also describes the types of social network information that may be stored and inform the algorithms used to determine which assets will have a strong impact on the user.  Such social network information can include, *inter alia*, groups the user is affiliated with, a user's on-line personality or alter ego, how others perceive the user, the user's involvement with other users in a social network, and the user's relationships with other users.  *Id.* at 13:50-62.

The '030 patent describes how the system identifies a digital media presentation based on the available user profile information.  Separate from that digital media presentation, the system determines if the presentation should be changed to present other digital media assets that will result in the user feeling more personally connected to the digital media presentation based on the system's identification of digital media assets based on the user's updated profile information, including the user's social network user profile information.  *Id.* at 17:17-18:3.  Such personalization of the digital media presentation may be based on collaboration with other users by, e.g., sharing digital media content with other users.  *Id.* at 19:58-66.

Claim 1 is directed to this new type of personalized digital media presentation system that identifies digital media content based not only on information about the user—and from the user—itself, but also on social network user profile information that the system learns based on the user's interactions within an online community.  *Id.* at 20:62-22:15 (claim 1).

## B.      The Prosecution History of the '030 Patent

The PTO addressed the eligibility of claim 1 under 35 U.S.C. § 101 during prosecution to its satisfaction.  The original method claims were rejected in the first Office Action as being directed to non-statutory subject matter.  Exhibit 1, September 30, 2008, Non-Final Rejection at 10Tales727.  In response, 10Tales amended the claims, and argued that amended claims 1-4 were directed to statutory subject matter, but the PTO maintained its rejection under § 101.  Exhibit 1, March 2, 2009, Amendment at 10Tales740-44; May 27, 2009, Final Rejection at 10Tales755.

In response to the Final Rejection, 10Tales cancelled the pending claims and presented two new system claims.  Exhibit 1, November 25, 2009, Amendment at 10Tales773-74.  In response, the PTO **withdrew its § 101 rejections and issued a Notice of Allowability**, allowing the claims that issued as claims 1 and 2 in the '030 patent.  Exhibit 1, June 4, 2014, Notice of Allowability at 10Tales847-49.  The Examiner provided the following statement as to the Allowable Subject Matter:

> 4.  The following is an examiner's statement of reasons for allowance:  the closest prior art, Srinivasan et al., does not teach or suggest, **retrieving user social network information from at least one source external to the presented first composite digital media display, wherein the user social network information contains one or more user attributes**. Herz … teaches this limitation, but the prior art does not teach or suggest adding this teaching from Herz to the teachings of Srinivasan et al.  Srinivasan et al. gets user attribute information by asking the users.  The prior art does not teach or suggest that the benefits of going to social networks to get user attribute information would outweigh the costs.

*Id.* at 10Tales848 (emphasis in original, footnote omitted).

## C.      TikTok's Denied IPR Proceeding

The PTAB also confirmed that the '030 patent was not a predictable combination of existing elements.  On February 9, 2021, TikTok filed a petition with the PTAB seeking IPR of claims 1 and 2 of the '030 patent.  *TikTok Inc. v. 10Tales, Inc.*, IPR2021-00476, Paper No. 1 (PTAB Feb. 9, 2021). In its petition, TikTok argued that the claims of the '030 patent were unpatentable as obvious under three different grounds asserting technical patents directed to systems for presenting digital media.  *Id.* The PTAB denied institution of the IPR.  Exhibit 1 at 10Tales874-95.

The PTAB concluded that TikTok failed to demonstrate in its petition that any of the asserted patent references "either alone or in combination, disclose '**retrieving user social network information from at least one source external to the presented first composite digital media**

**display, wherein the user social network information contains one or more user attributes,**' element [1g] in claim 1." *Id.* at 10Tales879 (emphasis added).

TikTok filed a Request for Rehearing of the PTAB's decision denying institution. On December 5, 2022, the PTAB denied TikTok's Request, reiterating that TikTok "failed to show Reisman discloses 'retrieving user social network information … wherein the user social network information contains one or more user attributes.'" *See* Dkt. 203.

## III.    APPLICABLE LAW

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." On a motion for judgment on the pleadings, the Court "must accept factual allegations in the complaint as true and construe the pleadings in the light most favorable" to 10Tales. *Regents of the Univ. of Minn. v. LSI Corp., Inc.*, No. 5:18-cv-00821-EJD, 2023 U.S. Dist. LEXIS 150306, at *5 (N.D. Cal. Aug. 25, 2023) (citation omitted). TikTok's motion may only be granted if, "after assessing the complaint and matters for which judicial notice is proper, it appears 'beyond doubt that [10Tales] cannot prove any facts that would support [its] claim for relief.'" *Fitbit, Inc. v. AliphCom*, 233 F.Supp.3d 799, 805 (N.D. Cal. 2017) (quoting *Morgan v. County of Yolo*, 436 F.Supp.2d 1152, 1155 (E.D. Cal. 2006)). Patents and their file histories are considered matters of public record, and are suitable for judicial notice. *See, e.g., Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 497 n.1 (Fed. Cir. 1997) (taking judicial notice of the entire Board of Patent Appeals and Interferences record because, among other reasons, the record is a public record and "thus capable of accurate and ready determination by resort to unquestionable sources.").[3]

A U.S. patent is presumed valid pursuant to 35 U.S.C. § 282(a), thus TikTok bears the burden of establishing invalidity under § 101 by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011); *CLS Bank Int'l v. Alice Corp. Pty.*, 717 F.3d 1269, 1284 (Fed. Cir. 2013), aff'd on other grounds, 573 U.S. 208 (2014); s*ee also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (rejecting district court's conclusion that patents were presumed valid but not presumed patent eligible). To defeat this presumption, TikTok must prove that "the *only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility."

---

[3]   10Tales has filed a Request for Judicial Notice concurrently with its Opposition.

*Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013) (emphasis in original), vacated on other grounds, 573 U.S. 942 (2014).  Because of the presumption, the Federal Circuit has explained that "dismissal for lack of eligible subject matter will be the exception, not the rule." *Id.*

Section 101 defines patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has explained that § 101 contains three narrow exceptions to patentable subject matter.  Claims that exclusively cover an abstract idea; a law of nature; or a natural phenomenon are not patentable.  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012).

In *Alice*, the Supreme Court described a two-step test for determining whether claims are directed to patent-ineligible subject matter.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014).  In the first step, the court must "determine whether the claims at issue are directed to a patent ineligible concept," such as an abstract idea.  *Id.* at 218.  To find that a claim is exclusively directed to an abstract idea, the abstract nature of the claim "should exhibit itself so manifestly as to override the broad statutory categories of eligible subject matter."  *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 868 (Fed. Cir. 2010).  Only if the Court determines that the claims are directed to an abstract idea does it proceed to the second step, in which it must then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78-79).  "[I]nventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act."  *Research Corp. Techs.*, 627 F.3d at 869.

The Federal Circuit has emphasized that in certain cases claim construction may be necessary to resolve a § 101 motion, even if it is not legally required.  *Ultramercial*, 722 F.3d at 1339; *see, e.g., Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012) (resolving claim construction disputes before proceeding).  This is because—as the Supreme Court has cautioned—"all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas."  *Mayo*, 566 U.S. at 71.  Courts "must therefore … articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful."

*Thales Visionix Inc. v. U.S.*, 850 F.3d 1343, 1347 (Fed. Cir. 2017) (citing *Alice*, 573 U.S. at 217 ("[W]e tread carefully in construing this exclusionary principle lest it swallow all of patent law.")).

Additionally, the Federal Circuit has cautioned that the § 101 analysis may present "subsidiary fact questions" that prevent resolution of the issue on a Rule 12 motion. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018); *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) ("underlying factual issues"); *see also Arrhythmia Research Tech., Inc. v. Corazonix Corp.*, 958 F.2d 1053, 1055-56 (Fed. Cir. 1992) ("[T]his question may require findings of underlying facts specific to the particular subject matter and its mode of claiming …."). "[T]he analysis under § 101, while ultimately a legal determination, is rife with underlying factual issues." *Ultramercial*, 722 F.3d at 1339. These factual issues include, *inter alia*, "a search for limitations in the claims that narrow or tie the claims to specific applications of an otherwise abstract concept," "determining whether the patent embraces a scientific principle or abstract idea," whether additional elements are "routine, well-understood, or conventional" and "any inquiry into the scope of preemption—how much of the field is 'tied up' by the claim." *Id.*

In an *Alice* analysis at the pleading stage, all factual allegations in the complaint are taken as true and in a light most favorable to the plaintiff, and "[t]he question of whether a claim element or combination of elements is well-understood, routine, and conventional to a skilled artisan in the relevant field is a question of fact" that "must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

## IV.    ARGUMENT

Like its earlier failed attempts to invalidate claim 1 of the '030 patent, TikTok's last-ditch effort also fails.  Under a proper *Alice* analysis, this Court's claim construction confirms that claim 1 is directed to a system having specified capabilities, and not an abstract idea.  As to the capabilities of the system recited in claim 1, the PTO confirmed that they were improvements over the prior art in allowing claim 1 to issue in the first place.  *See* Exhibit 1 at 10Tales847-49.  And when TikTok challenged the PTO's allowance of the '030 patent by presenting additional prior art, the PTAB confirmed yet again that claim 1 recites an improvement over the prior art by denying institution of TikTok's IPR petition.  Exhibit 1 at 10Tales879.

These findings—and the Court's claim construction—are consistent with 10Tales' allegations in its Complaint, where 10Tales alleges, *inter alia*, that "[c]laim 1 … claims a server-based system that associates user attributes with digital media attributes and creates a user-specific composite digital media display." FAC at ¶ 58.  10Tales alleges that the system recited in claim 1 "reflects technological improvements upon the state of the art at the time," which "were not conventional or generic," "involved novel and nonobvious approaches to the problems and shortcomings prevalent in the art at the time," and "involve and cover more than just the performance of well-understood, routine, and/or conventional activities known to the industry prior to the invention." FAC at ¶ 59.  10Tales further alleges that "one significant improvement over the prior art was the teaching of analyzing how a user interacts with other users in an online social network in order to determine that user's affinity for certain digital media content, and then teaching the use of a rule based algorithm to use this information to create a user-specific composite digital media display for a particular user." FAC at ¶ 60.

The allegations set forth in 10Tales' Complaint are material and, rather than being conclusory, are consistent with and have been confirmed by the PTO's grant of the '030 patent and the PTAB's denial of TikTok's IPR petition.  These allegations must be accepted by the Court as true and construed in a light most favorable to 10Tales. *See Regents of the Univ. of Minn.*, 2023 U.S. Dist. LEXIS 150306, at *5.  Given the allegations pled in 10Tales' Complaint and the record before the PTO, TikTok's **fourth attempt** to invalidate claim 1 cannot succeed because it cannot prove beyond doubt that 10Tales cannot prove any of these facts that support its claim. *See Fitbit*, 233 F.Supp.3d at 805.

## A.    *Alice* Step-One

Under § 101, "anything under the sun that is made by man," is patent-eligible. *Chakrabarty*, 447 U.S. at 309.  Given the extraordinary breadth of § 101, courts have attempted to carve out exceptions to patent-eligible subject matter—namely, "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at 216 (citations omitted).  While "laws of nature" and "natural phenomena" are not "made by man" and therefore more easily identified, the concept of what constitutes an "abstract idea" has been much more elusive.  As Judge Linn noted, "the contours of the abstract idea exception are not easily defined.  For that reason, the abstract idea exception is almost impossible to apply consistently and coherently." *Smart Sys. Innovations, LLC v. Chi. Transit*

1   *Auth.*, 873 F.3d 1364, 1377 (Fed. Cir. 2017) (Linn, J., dissenting-in-part and concurring-in-part).

2   Chief Judge Moore agrees: "[w]hat we have is worse than a circuit split—it is a court bitterly divided.

3   As the nation's lone patent court, we are at a loss as to how to uniformly apply § 101." *Am. Axle &*

4   *Mfg., Inc. v. Neapco Holdings LLC*, 977 F.3d 1379, 1382 (Fed. Cir. 2020) (Moore, J., concurring).

5           In any event, the Federal Circuit has stated that "[a] telltale sign of abstraction is when the

6   claimed functions are mental processes that can be performed in the human mind or using a pencil and

7   paper." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361-62 (Fed. Cir. 2023) (cleaned

8   up). Here, as a result of the Court's claim construction, it is clear that claim 1 is not directed to an

9   abstract idea, but rather, to a system that carries out specified capabilities that are an improvement

10  over the prior art systems. Claim 1 is neither directed to a mental process nor a process that can be

11  carried out using a pencil and paper. Instead, claim 1 is directed to a system that operates in a client

12  server environment and operates on digital media assets for display to a user.

13          **1.      TikTok's *Alice* Step-One Analysis Fails to Consider Claim 1 as a Whole**

14          In its Motion, TikTok sets up a framework to support its *Alice* step-one analysis that is belied

15  by the record that it cites and reveals the flaw in its approach. First, it misleadingly states (at 11) that

16  "Judge Gonzalez Rogers determined claim 1 is directed to an abstract idea of 'targeted information

17  …,' routinely found patent ineligible by the Federal Circuit." But Judge Gonzalez Rogers made no

18  such determination, and did not in any way characterize claim 1 as being of a type that is "routinely

19  found patent ineligible." Instead, Judge Gonzalez Rogers merely noted that the '030 patent bears

20  similarities to the patent in *Free Stream Media*, and noted that the Federal Circuit found the patent in

21  that case to be directed to the abstract idea of targeted advertising. Dkt. 156 at 5. But rather than

22  making any determination with respect to the '030 patent, Judge Gonzalez Rogers' Order states that

23  "the Court finds that claim construction can help clarify the basic character of the claimed invention

24  and whether the alleged improvements are in fact improvements over prior art. Thus, as claim

25  construction has not yet occurred in this case, **the Court finds that it cannot, at this juncture,**

26  **adjudicate the issue of whether the patent is directed to patent-ineligible ideas**." *Id.* at 6.

27          Second, TikTok argues (at 12) that during the hearing on its first § 101 motion, Judge Gonzalez

28  Rogers asked 10Tales to "identify ***all*** claim elements that required construction to change the outcome

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(C) AND 35 U.S.C. § 101

of the § 101 analysis," and that "10Tales identified two: (1) retrieving user social network information and (2) performing a rule-based substitution." Dkt. 206 at 12 (citing Dkt. 206-1 at 20:12-24:19). TikTok's argument is misleading for at least two reasons. First, as discussed *supra*, there was no outcome of the § 101 analysis. Second, throughout the colloquy cited in TikTok's Motion, 10Tales's counsel repeatedly stated that it was the **claim as whole** that needed to be considered in a proper § 101 analysis. *See* Dkt. 206-1 at 21:6-17 (counsel for 10Tales stating "that entire improvement is in the context of the **entire claim**," and "…you have to see what **the claim as a whole** does"); *id.* at 25:10-18 (counsel for 10Tales confirming that it is relying on "**[t]he claim as a whole**").

Based on its misleading set-up, TikTok's *Alice* step-one argument misses the forest for the trees. *See CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1371 (Fed. Cir. 2020) ("Generalizing the asserted claims as being directed to collecting, analyzing, and reporting data is inconsistent with our instruction that courts be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." (cleaned up)). TikTok gets bogged down in arguing (at 11) that each step recited in claim 1—"[w]hen viewed individually"—recites nothing more than "a generic 'verb' plus a 'result,' and no specific mechanism for achieving the 'result.'" TikTok's approach to its analysis does not follow *Alice*, and misses the mark. TikTok fails to consider the focus of the claimed invention, which is fatal to its analysis.

It its first § 101 motion, TikTok argued that claim 1 of the '030 patent is directed merely to "presenting customized media content based on retrieved social network information containing user attributes." Dkt. 132 at 8. Now, TikTok argues (at 10) that claim 1 "is an abstract idea for targeted advertising"—although the word "advertising" does not even appear in the claims. In any event, TikTok's analysis of claim 1 departs from the guidance set forth in *Alice* and its progeny. Under *Alice* step-one, the determination of whether a claim is "directed to" an abstract idea requires that the claim be considered **in its entirety** and "in light of the specification" to determine whether its "character **as a whole** is directed to excluded subject matter." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). The *Alice* step-one analysis "depends on an accurate characterization of what the claims require and of what the patent asserts to be the claimed advance." *Tec-Sec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1294 (Fed. Cir. 2020). "The accuracy of those characterizations is crucial to the sound

conduct of the inquiries into the problem being addressed and whether the line of specificity of solution has been crossed." *Id.* TikTok has described claim 1 "at such a high level of abstraction and untethered from the language of the claims," which will "all but ensure[] that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337.

TikTok's *Alice* step-one "analysis" is backwards. Indeed, TikTok's limitation-by-limitation consideration of claim 1 by definition ignores the inquiry as to claim 1's "character as a whole"— which is the entire purpose of step one, i.e., determining whether the claim is directed to a patent eligible concept. *See Alice*, 573 U.S. at 217-18. It is only if—and after—a determination is made under step one that the claim as a whole is directed to, e.g., an abstract idea that the Court proceeds to a step-two inquiry under which it then "consider[s] the elements of [the] claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible combination." *Id.* at 217 (cleaned up).

TikTok introduces its step-one analysis (at 11) by stating that "viewed individually," none of the elements of claim 1 "recites an improvement to technology." But that is not the proper inquiry under *Alice* step-one. TikTok's step-one analysis looks specifically at only two limitations of claim 1, the "retrieving user social network information …" limitation and the "performing a rule based substitution …" limitation. TikTok seemingly attempts to disparage these limitations as reciting "generalized verbs plus a result" and which "do not improve technology." But TikTok's approach reveals the flaw in its *Alice* analysis.

First, all limitations reciting a step of a process are necessarily recited using verbs and results. And as for improving technology, TikTok's piecemeal limitation-by-limitation approach to its step-one analysis is self-fulfilling. "The 'directed to' inquiry … cannot simply ask whether the claims *involve* a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and action *involves* a law of nature and/or natural phenomena—after all, they take place in the physical world." *Enfish*, 822 F.3d at 1335 (cleaned up). "Rather, the 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether their character **as a whole** is directed to excluded subject matter." *Id.* (cleaned up).

Second, TikTok's pronouncement (at 14) that claim 1's "rule based substitution" is "not

1  reciting anything new" is a misplaced prior art argument in the context of § 101.  Again, by failing to

2  consider claim 1 in its entirety as an ordered combination, TikTok has avoided the proper step-one

3  analysis.  A step-one analysis "depends on an accurate characterization of what the claims require and

4  of what the patent asserts to be the claimed advance."  *Tec-Sec*, 978 F.3d at 1294.

5      While other § 101 cases can be instructive in an *Alice* inquiry, the cases relied upon by TikTok

6  in its string cites throughout its Motion—devoid of any analysis—miss the mark.  None of those cases

7  relate to claims directed to a technical improvement.  Instead, the claims in TikTok's purportedly

8  analogous cases for the most part were found to be abstract because they were directed to fundamental

9  economic or longstanding commercial or technical practices, as discussed further below.

10     Contrary to TikTok's characterization, claim 1 is not simply directed to "targeted advertising."

11  Indeed, the claims nowhere recite advertising.  "[D]escribing the claims at such a high level of

12  abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101

13  swallow the rule."  *Enfish*, 822 F.3d at 1337 (citation omitted).  As construed by the Court, claim 1 is

14  directed to a system including a server and a computer-readable storage medium.  *See* Dkt. 204 at 6-

15  9.  The system is programmed to cause the server to present a first personalized digital media

16  presentation to a user, and retrieve social network information about the user from a source external

17  to the digital media presentation.  The system uses that social network information to select a more

18  personalized set of digital media assets for that user—based on the retrieved social network

19  information from an external source—and then monitors the digital media presentation for a trigger

20  that indicates an opportunity to perform a rule based substitution of one or more of those better assets

21  into the presentation as a personalized digital media presentation.  There is nothing abstract about the

22  inventive system described in the '030 patent as set forth in claim 1, and TikTok's "analysis" runs

23  afoul of Federal Circuit precedent applying *Alice*.

24     Claim 1 does not recite a mathematical algorithm or a fundamental economic or longstanding

25  commercial practice such as ad placement.  Claim 1 involves both a computer and a networked

26  environment, but does not "merely recite the performance of some business practice known from the

27  pre-Internet world along with the requirement to perform it on the Internet."  *DDR Holdings, LLC v.*

28  *Hotels.com, L.P.*, 773 F.3d 1245, 1264 (Fed. Cir. 2014) (finding claims directed to retaining website

visitors not to be abstract).  As in *DDR*, claim 1 here is "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks," i.e., the desire to learn more about the user to identify content that will have a strong impact on that particular individual.  *Id.* at 1257.  Indeed, the invention described in the '030 patent addresses a challenge that is "particular to the Internet."  *See id.*

In particular, claim 1 of the '030 patent addresses the problem of personalizing a digital media presentation based not only on information provided to the system by the user, but also through the social dynamics of the user as learned by the system.  These aspects of the invention are recited in claim 1, *inter alia*, in limitations requiring "retrieving social network information from at least one source external to the presented first composite digital media display …," "selecting, based on the use attributes in the social network information, a second set of digital media assets …," "monitoring the first composite digital media display for the presence of a trigger … [indicating] a personalization opportunity …," "performing a rule based substitution … to create a user specific set of digital media assets," and "presenting to the user … the second composite digital media display."

TikTok's characterization of claim 1 is "materially inaccurate" because to arrive at it, TikTok "had to disregard elements of the claim[] at issue that the specification makes clear are important parts of the claimed advance in the combination of elements."  *Tec-Sec*, 978 F.3d at 1294.  TikTok has not proven by clear and convincing evidence that claim 1 of the '030 patent is exclusively directed to an abstract idea, and the Court should deny TikTok's Motion on that basis.

### 2. Claim 1 is Not Directed to an Abstract Idea

Under *Alice* step-one, the proper inquiry is "what the patent asserts to be the focus of the claimed advance over the prior art."  *Cosmokey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1097 (Fed. Cir. 2021) (internal quotations omitted).  The record here establishes that claim 1 is directed to a concrete, technical improvement over conventional systems, and TikTok has not—and cannot—prove otherwise, and certainly not by clear and convincing evidence.

The '030 patent describes conventional systems for providing a digital media presentation to users.  The patent explains the drawback of these conventional systems in seeking to "attract individuals to content that is personally more relevant and impactful for them."  '030 patent, 2:3-4.

The '030 patent improved upon conventional systems with an improved approach to personalizing digital media content.  Rather than simply relying on information that a user provides to the system itself, the improved system retrieves social network information about that user, and analyzes how that user interacts with other users in an online social network in order to determine the user's affinity for certain digital media content.  FAC at ¶¶ 58-60.  The system uses a rule-based algorithm to use the user's social network information to create a user-specific digital media display for a particular user that will have a strong impact on that user.  *Id.*  Nothing about such technical improvements can be said to be abstract.

The PTO recognized the improvement the '030 patent provided over conventional systems multiple times.  During prosecution, the examiner identified U.S. Patent No. 6,357,042 ("Srinivasan") as the "closest prior art" to the invention recited in claim 1 of the '030 patent.  Srinivasan's technology is directed to an authoring system for interactive video.  The examiner noted that in Srinivasan, the system "gets user attribute information **by asking the users**."  Exhibit 1 at 10Tales848.  But in allowing claim 1 to issue, the examiner stated that "Srinivasan et al., does not teach or suggest, **retrieving user social network information from at least one source external to the presented first composite digital media display, wherein the user social network information contains one or more user attributes**."  *Id.* (emphasis in original).

As recognized by the examiner in allowing the claims, claim 1 recites that specific information from a source external to the user's digital media presentation is obtained by the system to yield a desired result—a personalized digital media presentation that will have a strong impact on the user— which was not disclosed in conventional systems.  Indeed, the examiner stated that "[t]he prior art does not teach or suggest that the benefits of going to social networks to get user attribute information would outweigh the costs."  Exhibit 1 at 10Tales848.  As in *DDR Holdings*, when the limitations of claim 1 of the '030 patent are "**taken together as an ordered combination**, the claim[] recite[s] an invention that is not merely the routine or conventional use of the Internet."  773 F.3d at 1259.

The Federal Circuit has "routinely held software claims patent eligible under *Alice* step-one when they are directed to improvements to the functionality of a computer or network platform itself." *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1307 (Fed. Cir. 2020) (collecting cases).

Here, claim 1 recites an invention that is a technological improvement over conventional systems for presenting personalized digital media to a user.  That claim 1 is directed to a system that specifically retrieves user social network information from a source external to a digital media presentation establishes that there is no risk that claim 1 preempts any abstract idea.

Claim 1 therefore reflects a technological improvement over conventional digital media presentation systems.  TikTok has failed to prove otherwise by clear and convincing evidence—nor can it on this record.  TikTok does not address the nature of the claimed improvement in the '030 patent over conventional systems.  In particular, TikTok wholly ignores the prosecution history of the '030 patent, where the examiner confirmed that claim 1 of the '030 patent provides an improvement over the system described in the "closest prior art."  As evidence that TikTok's *Alice* analysis is materially flawed, as part of its first § 101 motion, TikTok went so far as to oppose 10Tales' request for judicial notice of excerpts of the prosecution history of the '030 patent [Dkt. 134-2].  Revealingly, TikTok argued that the prosecution history is "irrelevant to the patent eligibility question."  Dkt. 137-1 at 1.  In its current Motion, TikTok again ignores the prosecution history, which Courts are permitted to rely on as part of the *Alice* analysis because it is an important aspect of the intrinsic record.  *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1377-78 (Fed. Cir. 2015).  Viewing the record in the light most favorable to 10Tales, the record contains sufficient factual allegations to defeat TikTok's Motion under *Alice* step-one, and thus, TikTok's Motion should be denied.  *See, e.g., Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018) (upholding eligibility of claims that "recite a specific improvement over prior systems, resulting in an improved user interface for electronic devices"); *Thales*, 850 F.3d at 1349 (reversing lower court's judgment on the pleadings and upholding eligibility of claims directed to "a new and useful technique for using sensors to more efficiently track an object on a moving platform").

### 3.    Claim Construction Confirms Claim 1 is Patent-Eligible

During claim construction, TikTok argued that claim 1 of the '030 patent was indefinite as being directed to two separate classes of patentable subject matter, i.e., a system and a method.  This Court disagreed, and confirmed that claim 1 is not directed to an "idea of itself" or "a mental process that can be performed in the human mind or using a pencil and paper."  Instead, this Court held that

"claim 1 of the '030 patent recites a system," which is not abstract in any sense of the word.  Dkt. 204 at 8.  And because claim 1 has been construed to be directed to a system, TikTok cannot establish by clear and convincing evidence that it is abstract in nature because to do so, the abstract nature of the claim "should exhibit itself so manifestly as to override the broad statutory categories of eligible subject matter."  *Research Corp. Techs.*, 627 F.3d at 868.  TikTok can make no such showing here.

The Court has also construed the "creating … composite digital media display" claim terms as meaning "creating, from the … digital media assets, a … composite digital media display that combines two or more digital media assets."  Dkt. 204 at 9-13.  The construction of these claim terms also clearly distinguishes claim 1 from an "idea of itself" or a "mental process" because they clearly require a technical solution carried out by the claimed system.  So to does the Court's construction of the "display server" claim terms.  The Court construed these claim terms to require a "server," which "can be either a computer program, a physical computer capable of running a computer program, or a physical computer running a computer program."  *Id.* at 13-17.  The Court went on to require that the claimed "display server" presents information to the user as "part of the typical interaction between a server and a client in a conventional client-server model."  *Id.* at 17.  Again, as construed, claim 1 of the '030 patent cannot be found to be directed to an abstract idea.

Under the Court's claim construction, claim 1 is indisputably directed to a system having specific capabilities.  TikTok cannot, therefore, carry its burden to clearly and convincingly prove that claim 1 is directed to an abstract idea under *Alice* step-one.  Claim 1 is not directed to an abstract idea, and there is no need to proceed to a step two analysis under *Alice*.  "At step one, we examine whether the claim is directed to patent-ineligible subject matter.  Among other things, this examination permits us to distinguish between claims that recite mere concepts, functions or results (abstract ideas) from those that, through claimed limitations, chart the specific means for achieving such concepts, functions or results."  *Cosmokey Sols.*, 15 F.4th at 1100 (Reyna C.J., concurring) (citations omitted).  Here, the Court's claim construction confirms that claim 1 of the '030 patent is directed to a specific system for creating a more personalized set of digital media assets for a user based on retrieved user social network information.  And Federal Circuit "precedent is clear that once a claim is deemed not directed to an abstract idea, the *Alice* inquiry ends.  We do not proceed to step two."  *Id.*

### 4.      The Precedent TikTok Cites is Factually Distinguishable

TikTok relies on a number of cases in which claims were found to be abstract because they were directed simply to methods of organizing human activity using a computer or to fundamental economic or longstanding commercial or technical practices.

For example, in *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015)—in its *Alice* step-one inquiry—the Court found the claims to be directed to the abstract idea of "tracking financial transactions to determine whether they exceed a pre-set spending limit (i.e., budgeting)." *Id.* at 1367.  Similarly, in *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355 (Fed. Cir. 2021), the Court found that the claims were directed to "nothing more than implement[ing] a computer to achieve the abstract idea of providing targeted advertising to the mobile device user." *Id.* at 1365.  And in *Trinity Info Media*, 72 F.4th 1355, the Court found that the claims were "directed to the abstract idea of matching based on questioning" and again noted that "[a] telltale sign of abstraction is when the claimed functions are mental processes that can be performed in the human mind or using a pencil and paper." *Id.* at 1361-62.  In *In re Morsa*, 809 Fed. App'x. 913 (Fed. Cir. 2020), the Court found that because the claim "relates to the field of advertising and matching advertisers with entities via computer networks, it is directed to an abstract idea. *Id.* at 917 (internal quotations omitted).  In *Elec. Power Grp. LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016), the Court agreed with the district court that the claims were directed to carrying out economic transactions, i.e., the claims would cover "any way of effectively monitoring sources on a power grid." *Id.* at 1356. All of these claims are directed to simply "doing on a computer" that which had been done manually.

But claim 1 of the '030 patent is different in character than the claims found to be patent-ineligible in TikTok's cases.  As discussed *supra*, claim 1 is directed to a specific technological improvement over conventional systems.  As the Federal Circuit noted in *Elec. Power Grp.*: "patenting a particular solution 'would incentivize further innovation in the form of alternative methods for achieving the same result.'"  830 F.3d at 1356.  That is exactly what 10Tales did here—and it did so in 2003—which was long before social networks became ubiquitous, and over a decade before TikTok launched its app in the United States.

**B.      *Alice* Step-Two**

As set forth *supra*, claim 1 of the '030 patent is not directed to an abstract idea, and as a result, claim 1 is patent eligible under § 101, and there is no need to proceed to the *Alice* step-two inquiry. *Core Wireless*, 880 F.3d at 1363; *Thales*, 850 F.3d at 1349.  But even if the Court undertakes a step-two analysis, the record here precludes granting TikTok's Motion.  In *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016), the Court explained that for some cases, where it may be a "close call" as to the basic thrust of the invention (which it is not here), "it might become clear that the specific improvements in the recited computer technology go beyond 'well-understood, routine, conventional activities' and render the invention patent-eligible" under *Alice* step-two.  *Id.*, (citing *Alice*, 573 U.S. at 225).

Under an *Alice* step-two inquiry, TikTok must prove that the limitations of claim 1—both individually and as an ordered combination—lack an inventive concept.  To do so, TikTok must prove by clear and convincing evidence that the limitations of claim 1 were well-understood to those skilled in the art, routine, and conventional.  On this record, it cannot do so.  "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact—and as such—must be proven by clear and convincing evidence." *Berkheimer*, 881 F.3d at 1368.  Here—where the Court considers the factual allegations set forth in 10Tales' Amended Complaint and facts set forth in the prosecution history of the '030 patent—including the IPR—as true and in a light most favorable to 10Tales—TikTok's Motion should be denied.  *Id.* at 1370.

TikTok's purported analysis (at 18-23) of the four "sets" of claim limitations simply focuses on the verb of each step carried out by the system without ever analyzing the claimed system as a whole, which is fatal to its *Alice* step-two inquiry.  TikTok's "analysis" simply provides cherry-picked soundbites from cases that addressed claims reciting similar verbs as those recited in claim 1, but fails to address the inventive concepts recited in claim 1 as a whole and described in the '030 patent.

In an *Alice* step-two inquiry, it is necessary to "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566

1    U.S. at 78, 79).  TikTok fails to do so, and its Motion should be denied.

2         By way of example, TikTok never addresses the fact that claim 1 requires "retrieving **user**

3    **social network information** from at least one **source external to the presented first composite**

4    **digital media display**," and that "user attributes in the [retrieved] social network information" are

5    used by the claimed system to select "a second set of digital media assets."  The system then monitors

6    the "first digital media display for the **presence of a trigger**" that "indicates a **personalization**

7    **opportunity** in the first set of digital media assets."  Then, a "**rule based substitution** of one or more

8    of the digital media assets from the first digital media assets with one or more of the digital media

9    assets from the second set of digital media assets to **create a user specific set of digital media assets**."

10   It is this user specific set of digital media assets—having the benefit of the retrieved social network

11   information—that is ultimately presented to the user.  This ordered combination of claim elements as

12   a whole highlights a patentable improvement the '030 patent provides over conventional systems, as

13   recognized by the examiner during prosecution.  TikTok complains that claim 1 does not identify

14   "specific mechanisms" for carrying out the claimed invention, but that is because TikTok has

15   studiously avoided considering the claimed system as a whole in its analysis.  As recognized by the

16   examiner in allowing claim 1 to issue—and by the PTAB in denying TikTok's IPR—when the claim

17   is considered in its entirety, the inventive concept is apparent.

18        TikTok's Motion also fails to recognize that "[t]he inventive concept inquiry requires more

19   than recognizing that each claim element, by itself, was known in the art."  *Bascom*, 827 F.3d at 1350.

20   Instead, "an inventive concept can be found in the non-conventional and non-generic arrangement of

21   known, conventional pieces."  *Id.*  TikTok has ignored this critical and necessary component of the

22   inventive concept inquiry under *Alice* step-two, and has failed to carry its clear and convincing burden

23   to prove that claim 1 is patent ineligible under § 101.

24        The '030 patent describes the inventive concept set forth in the ordered combination of claim

25   elements recited in claim 1.  The '030 patent identifies drawbacks with conventional systems for

26   providing digital media narrative, including, for example, the difficulty such systems had in

27   "attract[ing] individuals to content that is personally more relevant and impactful for them."  The

28   '030 patent describes and claims an unconventional system that personalizes the digital media content

1   based not only on information provided to the system by the user, but also through information

2   obtained from sources external to the digital media, such as information relating to an

3   individual's dynamics within a social network community, as discussed above.

4   The prosecution history of the '030 patent confirms this evidence of an inventive concept.

5   During prosecution, the examiner allowed the claims finding that "the closest prior art … does not

6   teach or suggest, **retrieving user social network information from at least one source external to**

7   **the presented first composite digital media display, wherein the user social network information**

8   **contains one or more user attributes**." Exhibit 1 at 10Tales848 (emphasis in original).[4]

9   The PTAB also found that claim 1 was directed to an improvement over conventional systems

10  in denying TikTok's IPR petition. There the Board found that—even under a lower preponderance of

11  the evidence standard—TikTok failed to demonstrate that the asserted prior art "either alone or in

12  combination, disclose '**retrieving user social network information from at least one source**

13  **external to the presented first composite digital media display, wherein the user social network**

14  **information contains one or more user attributes**,' element [1g] in claim 1." Exhibit 1 at

15  10Tales879. Stated differently, the PTAB found that claim 1 is directed to a specific application that

16  is an improvement over the prior art, and as such, cannot be so abstract as to override the broad

17  statutory language of § 101. *See Research Corp. Techs.*, 627 F.3d at 869.

18  The findings by the PTO defeat TikTok's motion under Rule 12(c) because TikTok can only

19  prevail if, "after assessing the complaint and matters for which judicial notice is proper, it appears

20  'beyond doubt that [10Tales] cannot prove any facts that would support [its] claim for relief.'" *Fitbit*,

21  233 F.Supp.3d at 805 (quoting *Morgan*, 436 F.Supp.2d at 1155). TikTok has not carried its burden to

22  overcome the presumption of validity the '030 patent enjoys. The record facts establish that claim 1

23  is directed to a system that provides an improvement over conventional systems. Given these findings,

24  ───────────────

[4] Notably, in its unsuccessful effort to convince this Court that claim 1 is indefinite, TikTok presented

25  expert testimony in which TikTok's expert opined that "[g]iven the state of social networks at the time
    (April 7, 2003), … the process for extracting a user attribute from a user's interaction with a networked

26  community would not have been well known in the art to a POSITA." *See* Dkt. 185-3 (Declaration of
    Dr. Alan Bovik in Support of Defendants' Claim Construction Brief) at ¶ 163. Perhaps, this is the

27  reason that TikTok is trying to have the Court decide the issue on a Rule 12(c) motion as TikTok's
    own expert testimony would preclude summary judgment on the factual question as to whether the

28  "retrieving user social network information" limitation was "well-understood, routine, or
    conventional" to a person of ordinary skill in the art back in 2003.

1    10Tales has already established facts that claim 1 is not a mere drafting effort designed to monopolize

2    the abstract idea of "targeting advertising" as asserted by TikTok.  Claim 1 recites patent-eligible

3    subject matter because—as found by the PTO—it recites features that go well beyond simply stating

4    "targeting advertising" while adding the words "apply it."  *See Alice*, 573 U.S. at 221.

5           In addition, 10Tales' Amended Complaint includes factual allegations that are consistent with

6    and support what the intrinsic evidence shows.  In particular—and consistent with the Court's claim

7    construction—the Amended Complaint states that "[c]laim 1 of the '030 patent claims a server-based

8    system that associates user attributes with digital media attributes and creates a user-specific composite

9    digital media display."  FAC at ¶ 58.  And as found by both the examiner and the PTAB, the system

10   recited in claim 1 of the '030 patent reflects technological improvements upon the state of the art at

11   the time that were not conventional or generic at the time and that involve novel and non-obvious

12   approaches to the problems and shortcomings prevalent in the art at the time.  FAC at ¶ 59.  The

13   invention set forth in claim 1 involves more than just the performance of well-understood, routine, and

14   conventional activities known to the industry prior to 10Tales' invention.  FAC at ¶ 59.  One

15   significant improvement over the prior art was the teaching of analyzing how a user interacts with

16   other users in an online social network in order to determine that user's affinity for certain digital

17   media content, and then teaching the use of a rule based algorithm to use this information to create a

18   user-specific composite digital media display for a particular user.  FAC at ¶ 60.  The Court must

19   accept these factual allegations as true and view them in the light most favorable to 10Tales.  *Regents*

20   *of the Univ. of Minn.*, 2023 U.S. Dist. LEXIS 150306, at *5 (citation omitted).

21          In sum, the statements in the intrinsic record and the factual allegations set forth in 10Tales'

22   Amended Complaint must be accepted as true, and as such, they show that claim 1 of the '030 patent

23   is directed to patent-eligible subject matter.  On this record, TikTok has failed to prove by clear and

24   convincing evidence that claim 1 of the '030 patent fails an *Alice* step-two inquiry—let alone a step-

25   one inquiry.  There is nothing in the record that refutes 10Tales' factual allegations or the facts set

26   forth in the intrinsic record as a matter of law or justifies judgment on the pleadings under Rule 12(c),

27   and TikTok's Motion should be denied.  *See Bascom*, 827 F.3d at 1352.

28

1        **1.      Claim Construction Confirms Claim 1 is Directed to an Inventive Concept**

2            In *Alice*, at step-two, the Court "examine[s] the elements of the claim to determine whether it

3    contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible

4    application."  573 U.S. at 221 (cleaned up).  In words, "[a] claim that recites an abstract idea must

5    include additional features to ensure that the claim is more than a drafting effort designed to

6    monopolize the abstract idea."  *Id.*  As explained *supra*, the record evidence demonstrates that claim 1

7    of the '030 patent does not monopolize any abstract idea, as it is directed to a novel system that

8    provides a recognized improvement over conventional systems.

9            In addition to these facts—which must be accepted as true—the Court's claim construction

10   confirmed that the limitations recited in claim 1 of the '030 patent require substantially more than

11   "targeted advertising" while adding the words "apply it."  *Id.*  As explained *supra* at § A.3, which is

12   incorporated herein by reference, under the Court's claim construction, claim 1 is directed to a system

13   that carries out specifically identified capabilities for interacting within a client-server environment

14   and for creating an improved digital media presentation based on retrieved social network information

15   including user attributes.

16   **C.      Claim 1 Does Not Preempt the Abstract Idea of Targeted Advertising**

17           The concern that drives the judicial exceptions to patentability is one of preemption.  *Alice*,

18   573 U.S. at 217.  Accordingly, the *Alice* inquiry is intended to ensure that a patent does not simply

19   claim a building block of ingenuity, e.g., an abstract idea, but rather, integrates the building block into

20   something more, which will not tie up the underlying idea and transform the claim into a patent-

21   eligible idea.  *Id.*  "[A]ny inquiry into the scope of preemption—how much of the field is 'tied up' by

22   the claim—by definition will involve historic facts:  identifying the 'field,' the available alternatives,

23   and preemptive impact of the claims in that field.  The presence of factual issues coupled with the

24   requirement for clear and convincing evidence normally will render dismissal under [Rule 12]

25   improper."  *Ultramercial*, 722 F.3d at 1339 (explaining that a § 101 analysis is "rife with underlying

26   factual issues" such that "Rule 12(b)(6) dismissal for lack of eligible subject matter will be the

27   exception, not the rule.").  The preemption concern has been addressed by the courts in the context of

28   both steps of an *Alice* inquiry, i.e., to confirm that the claim is not "directed to" a judicial exception

1    such as an abstract idea (step-one), and if it is, to confirm that the claim recites "additional features"

2    such that it does not preempt the abstract idea itself (step-two).

3         As explained *supra*, the underlying facts here demonstrate that claim 1 does not preempt the

4    abstract idea of "targeting advertising" as TikTok alleges.  For example, in allowing claim 1 to issue,

5    the examiner found that the system described in the Srinivasan system would not be preempted

6    because it "does not teach or suggest, **retrieving user social network information from at least one**

7    **source external to the presented first composite digital media display, wherein the user social**

8    **network information contains one or more user attributes**," as required by claim 1 of the '030

9    patent.  Exhibit 1 at 10Tales 848 (emphasis in original).  Similarly, in denying TikTok's IPR petition,

10   the PTAB found that none of the systems described in the asserted patent references "either alone or

11   in combination, disclose '**retrieving user social network information from at least one source**

12   **external to the presented first composite digital media display, wherein the user social network**

13   **information contains one or more user attributes**,' element [1g] in claim 1."  Exhibit 1 at

14   10Tales879.  These findings overcome TikTok's Rule 12(c) motion.  *See Fitbit*, 233 F.Supp.3d at 805.

15        Based on the Court's claim construction, it is clear that claim 1 does not attempt to preempt

16   every application of the idea of targeting advertising, or any other abstract idea.  Claim 1 is directed

17   to a system providing specific capabilities and recites a specific way to improve a user's digital media

18   content by, *inter alia*, retrieving user social network information containing user attributes from a

19   source external to digital media display.  As a result, claim 1 recites additional features that ensure

20   that it is more than a drafting effort designed to monopolize an abstract idea.  *See DDR Holdings*, 773

21   F.3d at 1259.

22   **V.    CONCLUSION**

23        10Tales respectfully requests that the Court deny TikTok's Rule 12(c) Motion.[5]

24

---

25   [5]  In the unlikely event that the Court grants TikTok's motion, 10Tales respectfully requests leave to
     amend its First Amended Complaint to add facts that would survive a pleadings challenge because

26   "[f]actual allegations in a complaint can suffice to overcome *Alice* step 2," and courts "should, as in
     any civil case, freely grant leave to amend to allege the necessary facts."  *Realtime Data LLC v.*

27   *Reduxio Sys.*, 831 F. App'x 492, 498 n.3 (Fed. Cir. 2020) (non-precedential); *see also Aatrix Software*,
     882 F.3d at 1128 (finding district court abused its discretion in denying leave where the allegations in

28   the amended complaint, if true, "contradict[ed] the district court's conclusion that the claimed
     combination was conventional or routine").

1    Dated:  October 3, 2023                                    Respectfully submitted,

2                                                               COZEN O'CONNOR

3

4                                              By:      _/s/ Thomas J. Fisher_____
                                                       Barry Golob
5                                                      Thomas J. Fisher
                                                       Nathan Dooley
6
                                                       THE DAVIS FIRM PC
7                                                      William E. Davis, III
                                                       Rudolph (Rudy) Fink IV
8
                                                       *Attorneys for Plaintiff*
9                                                      *10Tales, Inc.*[6]

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
      ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
      [6] Each signatory concurred in the filing of this document.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(C) AND 35 U.S.C. § 101